Allan D. NewDelman, Esq. (004066)
ALLAN D. NEWDELMAN, P.C.
80 East Columbus Avenue
Phoenix, Arizona 85012
Telephone: (602) 264-4550
Facsimile: (602) 277-0144
Email: ANEWDELMAN@QWESTOFFICE.NET
Attorney for Debtor

IN THE UNITED STATES BANKRUPTCY COURT

IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>Charles R. Rose<br><br><br><br><br><br>Debtor | In Proceedings Under<br>Chapter Eleven<br><br>Case No.: 07-05284 EWH<br><br>PLAN OF REORGANIZATION<br><br>DATED: JULY 13, 2009 |

Debtor, Charles R. Rose, hereby submits his Plan of Reorganization in accordance with 11 U.S.C. §1121(a).

## I. DEFINITIONS

As utilized in this Plan of Reorganization (hereinafter "Plan") and in the Disclosure Statement (hereinafter "Disclosure Statement") which accompanies this Plan of Reorganization, the following definitions apply to the following terms:

1. "Adequate information" means information that would enable a hypothetical reasonable investor typical of holders of claims or interest of the Debtor's estate to make an informed judgment about the Debtor's Plan of Reorganization.

2. "Allowed and Approved Claim" shall mean a timely filed Proof of Claim pursuant to an Order of the Court setting a bar date to which that claim should be filed and no objection to the claim

having been filed. If an objection to a claim is filed, said claim will be allowed to the extent ordered by the Court.

3. "Bankruptcy Code" shall mean the Bankruptcy Code as set forth in Title 11 of the United States Code.

4. "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Arizona.

5. "Confirmation of the Plan" shall mean the entry of an order by the Bankruptcy Court confirming the Plan of Reorganization in accordance with §1129 of the Bankruptcy Code.

6. "Consummation of the Plan" means the accomplishment of all things required or provided for under the terms of the Plan.

7. "Court" shall mean the United States Bankruptcy Court for the District of Arizona.

8. "Creditors" shall mean all persons holding claims for secured and unsecured obligations, liabilities, demands or claims of any nature whatsoever against the Debtors arising at any time prior to confirmation of the Plan and administrative creditors.

9. "Debtor" is the petitioner in the above-captioned Bankruptcy case.

10. "Disclosure Statement" shall mean the Disclosure Statement filed in this case approved, after notice and a hearing by the Court as being in conformity with §1125 of the Bankruptcy Code.

11. "Effective date" shall be the same as the Plan distribution date as set forth herein below.

12. "Petition" means the original Chapter 11 Petition filed by the Debtor.

13. "Plan" shall mean Plan of Reorganization accompanying the Disclosure Statement as it may be amended, modified and/or supplemented pursuant to which Debtor proposes payment in whole or in part of creditors' claims.

14. "Plan distribution date" shall be December 31, 2008 and every three months thereafter.

15. All other terms not specifically defined by this Plan or Disclosure Statement shall have the meaning as designated in §101 of the Bankruptcy Code or, it not contained therein, their ordinary meaning.

## II. CLASSES OF CLAIMS

Administrative Claims.

These claims consist of the expenses of administration of the estate including attorney fees for Debtor's counsel and any unpaid fees to the U.S. Trustee

Unsecured Claims.

As reflected in the amended schedules filed by the Debtor, Debtor has unsecured claims in the sum of $195,504.36.

Secured Claims.

The original schedules reflect secured debt in the amount of $1,048,307.36.

Tax Claims.

The schedules reflect tax claims owed to the Internal Revenue Service, the Arizona Department of Revenue and the California Franchise Tax Board in the amount of $12,306.65. The Internal Revenue Service filed a claim for priority taxes in the amount of $9,306.65 on October 25, 2007 and the Arizona Department of Revenue filed a claim for priority taxes in the amount of $754.95 on October 25, 2008. No claim was filed by the California Franchise Tax Board.

Domestic Support Claims.

As reflected in the schedules filed by the Debtor, there are no domestic support orders against the Debtor. However, the adversary action commenced by Sheila White against the Debtor alleges

a priority support claim (attorney fees) owed by the Debtor in the amount of $12,252.24.

## III. TREATMENT OF CLAIMS NOT IMPAIRED UNDER THE PLAN

Classes 1, 4,5,6,7,8,9 and 12 are not impaired under the Plan in that the Plan does not alter the legal or contractual rights to which the holders of such claims are entitled and/or the Bankruptcy Code permits payment over an extended period of time and/or the holder of the claim has agreed to a different treatment. Members in Class 11 are not entitled to vote as their claims are disputed.

## IV. TREATMENT OF IMPAIRED CLAIMS UNDER THE PLAN

Classes 2A, 2B, 3 and 10 are impaired under the Plan. All allowed and approved claims or judicially determined claims will receive those amounts as reflected in the payment schedule under the Plan (Article V of the Plan).

## V. PAYMENT SCHEDULE UNDER THE PLAN

The Plan provides for 14 classes of claims (which includes two sub classes) to be paid or administered in the following manner:

Administrative Claims (Class 1).

These claims are for the expenses of administration of the estate, including attorney fees for Debtor's counsel and to the U.S. Trustee, if any. The total fees incurred by the Debtor as of June 15, 2009 is $18,877.16 subject to an offset against the retainer of $3,000.00 and replenishments to the retainer in the amount of $8,600.00. Debtor believes, at the time that the Debtor's Chapter 11 Plan is confirmed, that there will an administrative expense claim in the approximate amount of $8,277.16. This claim shall be paid in cash, or in the amounts allowed by the Court upon the Plan distribution date unless otherwise agreed to between the Debtor and the administrative creditor. **(This class is not impaired.)**

Secured Claim (Class 2 - America's Servicing Company).

The mortgage obligation, is secured by the Debtor's residence located at 10022 East Cortez Drive, Scottsdale, AZ. Debtor will continue to make all payments that come due pursuant to the terms of the Note and the Stipulation Regarding Motion for Relief approved by the Court on October 29, 2008. (**This claim is not impaired.**)

Secured Claim (Class 2A - Specialized Loan Servicing).

The mortgage obligation, is secured by the a second mortgage lien on the Debtor's residence located at 10022 East Cortez Drive, Scottsdale, AZ. Creditor has filed a proof of claims alleging a pre-petition claim in the amount of $47,355.90. The Debtor believes that the actual amount owed is less than $47,355.90. The Debtor, when the actual amount owed is determined, will pay this claim as set forth in the Disbursement Schedule, a copy of which is attached hereto as Exhibit "A". Debtor will continue to make all payments that come due pursuant to the terms of the Note. (**This claim is impaired.**)

Secured Claim (Class 2B - Thumos Corporation).

The mortgage obligation, is secured by the Debtor's residence located at 10022 East Cortez Drive, Scottsdale, AZ. Debtor asserts that there is no equity for this lien to attach to. The Debtor will file an action under 11 U.S.C. §506 to strip off this lien. Should the Debtor be successful in its action, this claim will be paid pursuant to the terms set forth in Class 11. Should the Debtor not be successful, the Debtor will continue to make all payments that come due pursuant to the terms of the Note. (**This claim is impaired.**)

Secured Claim (Class 3 - Bank of America).

Creditor is secured by a lien on a 2005 Itasca Meridian 39' Class A Motorhome. The

5

Motorhome is used exclusively by the Debtor when he in on the road for business. The payment to Bank of America on the Motorhome is far less then the costs to stay in a hotel and to eat out. A Motion for Relief from Automatic Stay was filed on behalf of Bank of America on March 21, 2008 and an Order terminating the automatic stay was entered by the Court on April 11, 2008. The Debtor believes the value of Bank of America's collateral to be $99,000.00 and will allow Bank of America to have a secured claim in the amount of $99,000.00. The Debtor will pay Bank of America the sum of $1,300.00 per month, with the first payment beginning 30 days from the date that the Chapter 11 Plan is confirmed, and continuing each month thereafter until such time that Ban k of America's secured claim is paid in full. Bank of America shall have an unresolved unsecured claim in the amount of $48,437.51 which shall be paid as a member Class 11. **(This claim is impaired.)**

Secured Claim (Class 4 - Chrysler Financial).

Creditor is secured by a lien on 2003 Dodge Ram 3500 Pickup. Debtor will continue to make all payments that come due pursuant to the terms of the Agreed Order on Stipulation to Resolve Motion for Relief and Cure Default approved by the Court on March 24, 2009. Note. **(This claim is not impaired.)**

Secured Claim (Class 5 - Ford Motor Credit)

Creditor is secured by a lien on a 2004 Ford Excursion. Debtor will continue to make all payments that come due pursuant to the terms of the Note. **(This claim is not impaired.)**

Priority Support Claim (Class 6 - Sheila White).

Sheila White filed a proof alleging a secured claim in the amount of $15,626.24 on May 23,. 2008. This claim was also the subject of an adversary action, Case No. 08-00065 EWH filed on January 28, 2008. Pursuant to the terms of a settlement agreement entered into by the parties, Sheila

White shall have a non-dischargeable claim against the Debtor in the amount of $6,126.12 to which $2,500.00 has been paid. Sheila White's claim shall be paid as shown in the Disbursement Schedule, a copy of which is attached hereto as Exhibit "A". Sheila White shall also a general unsecured claim in the amount of $9,500.12 which shall be paid as a member of Class 10. **(This class is not impaired.)**

Tax Claims (Class 7 - Internal Revenue Service).

The IRS shall have a priority tax claim for unpaid income taxes in the amount of $9,306.65. This claim shall accrue interest at the rate of 4.0% per annum. The Debtor will pay this claim from earned income as set forth in Exhibit "A" within the time frame provided by the Bankruptcy Code.

The Debtor's failure to comply with the Plan provisions concerning the liability owed to the IRS which includes, but not limited to, the failure to make the full and timely payments of all amounts due under the Confirmation Order as well as full and timely payments of all amounts due for post-confirmation periods, shall constitute a default of the Plan. If the Debtor fails to cure the default within ten (10) days after written notice of the default from the IRS or its agents, the entire balance due the IRS shall be immediately due and owing. Further, in the event of a default, the IRS may enforce the entire amount of its claim, exercise any and all rights and remedies under applicable non-bankruptcy law which includes, but is not limited to, state tax collection procedures, and obtain any other such relief deemed appropriate by the Bankruptcy Court. **(This class is not impaired.)**

Tax Claims (Class 8 - Arizona Department of Revenue.)

The Arizona Department of Revenue shall have a priority tax claim for unpaid income taxes

in the amount of $754.95. This claim shall accrue interest at the rate of 5.0% per annum[1]. The Debtor will pay this claim from earned income as set forth in Exhibit "A" within the time frame permitted by the Bankruptcy Code.

The Debtor's failure to comply with the Plan provisions concerning the liability owed to the ADOR, which includes, but not limited to, the failure to make the full and timely payments of all amounts due under the Confirmation Order as well as full and timely payments of all amounts due for post-confirmation periods, shall constitute a default of the Plan. If the Debtor fails to cure the default within ten (10) days after written notice of the default from either then ADOR or its agents, the entire balance due ADOR shall be immediately due and owing. Further, in the event of a default, ADOR may enforce the entire amount of its claim, exercise any and all rights and remedies under applicable non-bankruptcy law which includes, but is not limited to, state tax collection procedures, and obtain any other such relief deemed appropriate by the Bankruptcy Court. **(This class is not impaired.)**

Unsecured Claims (Class 9 - California Department of Insurance)

The California Department of Insurance shall have an allowed general secured claim in the amount of $275,000.00 pursuant to the terms of a settlement agreement. Payments shall be and are continuing to be made outside the Plan by Paramount Disaster Recovery. [2] **(This class is not impaired.)**

Unsecured Claims (Class 10)

---

[1] Or whatever the legal rate is as of the date of Confirmation of the Debtor's Chapter 11 Plan of Reorganization.

[2] Paramount Disaster Recovery was the entity that contracted the Debtor to perform certain claims actions which led to the Complaint filed by the California Department of Insurance. Debtor asserts that no subrogation monies will be owed to Paramount Disaster Recovery.

8

This class shall be made up of those creditors filing timely claims. The following creditors are deemed to have filed timely claims:

| Creditor | Claim No. | Claim Amount |
|---|---|---|
| Beneficial | 3 | $ 6,423.49 |
| Internal Revenue Service | 4 | $ 890.77 |
| Arizona Department of Revenue | 5 | $ 173.25 |
| Wayland and Vukadinovich | 6 | $ 490.00 |
| Law Office of Brian Martin | 7 | $ 22,905.59 |
| Healthy Trees Inc. | 10 | $ 2,600.00 |
| Slaton Law Office | 13 | $ 16,724.62 |
| Susan Swick, Esquire | 14 | $ 40,063.45 |
| TOTAL | | $ 90,271.17 |

All members in this class shall be paid as provided for in the Disbursement Schedule attached hereto as Exhibit "A". **(This class is impaired.)**

Contested/Disputed Claims (Class 11).

Class 11 shall consist of those claims in which the Debtor has timely filed an objection. This Class may be supplemented with additional members once all claims have been reviewed. In the event that any such claim becomes proven and/or allowed by the Court, such claim shall be become a member of Class 11 and treated accordingly. **(This class is not entitled to vote for acceptance or rejection of the Plan)** Class 10 shall be made up of the following creditor(s):

| Creditor Name | Claim No. | Claim Amount |
|---|---|---|
| The Cavanagh Law Firm | 9 | $ 13,939.24 |
| Derrick Collins | 11 | $150,000.00 |
| Bank of America | 12 | $ 48,437.51 |
| Jason & Terry Tarlov | 16 | $ 30,433.29 |
| TOTAL | | $142,810.04 |

Debtor's Interest (Class 12).

Debtor shall retain all of the legal and equitable interest in exempt and non-exempt assets of this estate, as all reconciliation issues have been met. All estate property shall vest in the Debtor at

confirmation. **(This class is not impaired).**

## VI. DISPUTED CLAIMS

Debtor reserves the right to verify and object to any proof of claim. Payment of disputed claims shall be made only after agreement has been reached between the Debtor and the Creditor or upon the order of the Court. Any and all objections to proofs of claim will be filed within sixty (60) days of the Effective Date of this plan or will be waived.

## VII. . EXECUTORY CONTRACTS

At the time of the filing, the Debtor had no leases or executory contracts to either assume or reject.

## XI. DOMESTIC SUPPORT OBLIGATIONS

The Debtor has ongoing Court ordered support obligations to which he is current.

## XII. MEANS OF EXECUTION/PROJECTION

This Plan will be a base Plan with minimum payments of all timely filed and allowed claims to be made as set forth in the attached Disbursement Schedule. The total amount to be paid to the unsecured creditors will be $14,604.24. The Debtor may increase the amount of the payments set forth in the Disbursement Schedule should the Debtor's income permits. The funds necessary for the satisfaction of all approved and allowed claims will be derived from the Debtor's earned income. The Debtor reserves the right to accelerate payment under the Plan from financing obtained from third party financing. Debtor believes that by virtue of the Plan that he will have the ability to pay all allowed and approved claims pursuant to the Plan of Reorganization.

11 U.S.C. §1129(a)(15) provides for confirmation of a Chapter 11 Plan in which the Debtor is an individual and to which the holder of an allowed unsecured claim has objected to the

confirmation of the Plan. While the Debtor does not foresee any objections to his Plan of Reorganization, the Debtor submits that he has met the absolute priority rule because the amount to be paid under the Plan is greater than the amount that any general unsecured creditor would received if this case were a case under Chapter 7.[3] The "value of the property to be distributed under he plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2) to be received during the 5-year period beginning on the date that the first payment is due under the Plan, or during the period for which the plan provides payments, whichever is longer." 11 U.S.C. §(a)(15)(B). In this case the Debtor will contribute his disposable income for an additional 13 months over and beyond the 60 months

## X. QUARTERLY FEES AND REPORTS

Debtor shall continue to pay quarterly fees to the U.S. Trustee System until such time as a Final Decree has been entered in this matter by the Court, closing this Chapter 11 proceeding. Debtor shall continue to file monthly operating reports until such time as the Court enters an Order confirming this Chapter 11 Plan of Reorganization. At such time, Debtor shall cease filing monthly operating reports and shall begin filing 90 day reports. These 90 day reports shall be filed until such time as a Final Decree has been entered in this matter by the Court, closing this Chapter 11 proceeding.

## XI. IMPLEMENTATION AND CONSUMMATION OF PLAN

The terms of the Plan subsequent to confirmation shall bind the Debtor, any entity acquiring

---

[3] The Liquidation Analysis, attached hereto as Exhibit C, shows that the general unsecured creditors would receive nothing if this case had been filed as a Chapter 7 and that reconciliation is a negative $22,644.99. The Debtor proposes to pay his general unsecured creditors the sum of $14,604.24 over a period of 63 months.

11

property under the Plan, and creditor or claimant, whether or not such creditor or claimant has accepted the Plan. All property of the estate shall vest in the Debtor and shall be free from attachment, levy, garnishment or execution by creditors bound by the Plan.

Subsequent to confirmation of the Plan of Reorganization, the Debtor shall continue to engage in her business as presently conducted or in such form or manner as the Debtor may deem advisable. The Plan does not provide for the liquidation of all or substantially all of the property of the estate. Notwithstanding the foregoing, however, the Debtor shall be free to operate in the ordinary course and may, without any further order of the Court, convey, sell, assign, purchase, or lease any property of or for the benefit of the estate.

It shall be the obligation of each creditor participating under the Plan to keep the Debtors advised of its current mailing address. In the event any payments tendered to creditors are mailed, postage prepaid, addressed (1) to the address specified in the Debtor's schedules and statement, (2) to the address specified in any proof of claim filed by a creditor or claimant herein or (3) to the address provided by any such creditor or claimant for purposes of distribution, and if subsequently the Post Office returns such distribution due to a lack or insufficiency of address or forwarding address, the Debtor shall retain such distribution for a period of six months. Thereafter, the distribution shall revert to the Debtor without further Order of the Court and free and clear of any claim of the named distributee. The Debtor shall thereafter not be required to mail subsequent distributions to any creditor for whom a distribution has been returned by the Post Office. The Debtor reserves the right to modify the Plan in accordance with §1127 of the Bankruptcy Code. The Plan may be modified prior to confirmation provided that the Plan still complies with §1122 and §1123 of the Bankruptcy Code. The Plan may be modified subsequent to confirmation and before

substantial consummation of the Plan under such circumstances as may warrant such under §1123 of the Bankruptcy Code. Any holder of a claim or interest that has been previously accepted or rejected a confirmed Plan, shall be deemed to have accepted or rejected any subsequently modified Plan unless the holder of such claim or interest changes its acceptance or rejection of the Plan within the time fixed by the Court.

## XII. DEFAULT

The Debtor's failure to make any payment due under the Plan within sixty (60) days after demand for payment after its due date shall constitute a default unless the Debtor and the affected creditor agree to delayed payment.

Upon default, creditors may pursue any remedy provided by the state or federal law, including foreclosing any security interest, suing on any promissory note issued or continued in effect under the Plan.

## XIII. RETENTION OF JURISDICTION

The Bankruptcy Court will retain jurisdiction over this case for purposes of determining the allowance of claims or objection to claims. The Court will also retain jurisdiction for purposes of fixing allowances for compensation and/or for purposes of determining the allowability of any other claimed administrative expenses. The Court will also retain jurisdiction for the purpose of establishing bar dates and making a determination with respect to all disputed claims. Finally, the Court shall retain jurisdiction for purposes of determining any dispute arising from the interpretation, implementation or consummation of the Plan and to implement and enforce the provisions of the Plan. Notwithstanding anything to the contrary contained herein, the Debtor shall not be bound by estoppel, the principles of res judicata or collateral estoppel with respect to any term or provision

contained herein in the event the Plan is not confirmed.

DATED this 13th day of July, 2009.

                                          ALLAN D. NEWDELMAN, P.C.

                                          /s/ Allan D. NewDelman
                                          Allan D. NewDelman
                                          Attorney for Debtor

A copy of the foregoing
mailed this 14th day
of July, 2009, to:

Office of U.S. Trustee
230 North First Avenue
Suite 204
Phoenix, Arizona 85003

/s/ R. Scott Graves
R. Scott Graves
Paralegal

14

/s/ Allan D. NewDelman
Allan D. NewDelman
Attorney for Debtor

A copy of the foregoing
mailed/delivered this
13th day of July, 2009,
 to:

Office of the U.S. Trustee
230 North First Avenue
Suite 204
Phoenix, Arizona   85003



/s/ R. Scott Graves
R. Scott Graves
Paralegal



**APPROVED:**

/s/ Charles R. Rose
Charles R. Rose
Debtor

27

# EXHIBIT "A"

# CHARLES R. ROSE
## USBC 07-05284 EWH
### Distribution of Payments to Made Under Chapter 11 Plan

| Ending | AND Admin Claim | Specialized Loan Ser Claim | Sheila White Claims | IRS Priority Claim | ADOR Priority Claim | General Unsecured Creditors | Total Monthly Payment |
|---|---|---|---|---|---|---|---|
| December 31, 2009 | 1,500.00 | 300.00 | 650.00 | 0.00 | 0.00 | 0.00 | **2,450.00** |
| **YEAR 1 TOTALS** | **$1,500.00** | **$300.00** | **$650.00** | **$0.00** | **$0.00** | **$0.00** | **$2,450.00** |
| March 30, 2010 | 1,500.00 | 300.00 | 1,326.12 | 0.00 | 323.88 | 0.00 | **3,450.00** |
| June 30, 2010 | 1,500.00 | 500.00 | 0.00 | 897.22 | 552.78 | 0.00 | **3,450.00** |
| September 30, 2010 | 1,500.00 | 500.00 | 0.00 | 1,000.00 | 0.00 | 450.00 | **3,450.00** |
| December 31, 2010 | 1,300.00 | 500.00 | 0.00 | 1,000.00 | 0.00 | 450.00 | **3,250.00** |
| **YEAR 2 TOTALS** | **$5,800.00** | **$1,800.00** | **$1,326.12** | **$2,897.22** | **$876.66** | **$900.00** | **$13,600.00** |
| March 30, 2011 | 0.00 | 500.00 | 0.00 | 1,000.00 | 0.00 | 450.00 | **1,950.00** |
| June 30, 2011 | 0.00 | 500.00 | 0.00 | 1,000.00 | 0.00 | 450.00 | **1,950.00** |
| September 30, 2011 | 0.00 | 500.00 | 0.00 | 1,000.00 | 0.00 | 450.00 | **1,950.00** |
| December 31, 2011 | 0.00 | 500.00 | 0.00 | 1,000.00 | 0.00 | 450.00 | **1,950.00** |
| **YEAR 3 TOTALS** | **$0.00** | **$2,000.00** | **$0.00** | **$4,000.00** | **$0.00** | **$1,800.00** | **$7,800.00** |
| March 30, 2012 | 0.00 | 700.00 | 0.00 | 2,000.00 | 0.00 | 600.00 | **3,300.00** |
| June 30, 2012 | 0.00 | 700.00 | 0.00 | 2,000.00 | 0.00 | 600.00 | **3,300.00** |
| September 30, 2012 | 0.00 | 2,460.14 | 0.00 | 239.86 | 0.00 | 600.00 | **3,300.00** |
| December 31, 2012 | 0.00 | 2,700.00 | 0.00 | 0.00 | 0.00 | 600.00 | **3,300.00** |
| **YEAR 4 TOTALS** | **$0.00** | **$6,560.14** | **$0.00** | **$4,239.86** | **$0.00** | **$2,400.00** | **$13,200.00** |
| March 30, 2013 | 0.00 | 2,700.00 | 0.00 | 0.00 | 0.00 | 600.00 | **3,300.00** |
| June 30, 2013 | 0.00 | 2,700.00 | 0.00 | 0.00 | 0.00 | 600.00 | **3,300.00** |
| September 30, 2013 | 0.00 | 2,700.00 | 0.00 | 0.00 | 0.00 | 600.00 | **3,300.00** |
| December 31, 2013 | 0.00 | 2,700.00 | 0.00 | 0.00 | 0.00 | 600.00 | **3,300.00** |
| **YEAR 5 TOTALS** | **$0.00** | **$10,800.00** | **$0.00** | **$0.00** | **$0.00** | **$2,400.00** | **$13,200.00** |

# CHARLES R. ROSE
# USBC 07-05284 EWH
## Distribution of Payments to Made Under Chapter 11 Plan

| Ending | AND Admin Claim | Specialized Loan Ser Claim | Sheila White Claims | IRS Priority Claim | ADOR Priority Claim | General Unsecured Creditors | **Total Monthly Payment** |
|---|---|---|---|---|---|---|---|
| March 30, 2014 | 0.00 | 2,700.00 | 0.00 | 0.00 | 0.00 | 600.00 | **3,300.00** |
| June 30, 2014 | 0.00 | 2,700.00 | 0.00 | 0.00 | 0.00 | 600.00 | **3,300.00** |
| September 30, 2014 | 0.00 | 2,700.00 | 0.00 | 0.00 | 0.00 | 600.00 | **3,300.00** |
| December 31, 2014 | 0.00 | 2,700.00 | 0.00 | 0.00 | 0.00 | 600.00 | **3,300.00** |
| **YEAR 5 TOTALS** | **$0.00** | **$10,800.00** | **$0.00** | **$0.00** | **$0.00** | **$2,400.00** | **$13,200.00** |
| March 30, 2015 | 0.00 | 2,700.00 | 0.00 | 0.00 | 0.00 | 600.00 | **3,300.00** |
| June 30, 2015 | 0.00 | 2,700.00 | 0.00 | 0.00 | 0.00 | 600.00 | **3,300.00** |
| September 30, 2015 | 0.00 | 2,700.00 | 0.00 | 0.00 | 0.00 | 600.00 | **3,300.00** |
| December 31, 2015 | 0.00 | 2,700.00 | 0.00 | 0.00 | 0.00 | 600.00 | **3,300.00** |
| **YEAR 6 TOTALS** | **$0.00** | **$10,800.00** | **$0.00** | **$0.00** | **$0.00** | **$2,400.00** | **$13,200.00** |
| March 30, 2016 | 0.00 | 2,700.00 | 0.00 | 0.00 | 0.00 | 600.00 | **3,300.00** |
| June 30, 2016 | 0.00 | 1,595.76 | 0.00 | 0.00 | 0.00 | 1,704.24 | **3,300.00** |
| **TOTALS** | **$0.00** | **$4,295.76** | **$0.00** | **$0.00** | **$0.00** | **$2,304.24** | **$6,600.00** |
| **GRAND TOTALS** | **7,300.00** | **47,355.90** | **1,976.12** | **11,137.08** | **876.66** | **14,604.24** | **83,250.00** |